R. S. PULLEN, as Ex'r. and Trustee and another *v.* THE HERON MINING COMPANY and others.

A party who purchases the equity of redemption in a first mortgage, with full knowledge of the rights of the assignees of the mortgagee, and who, as mortgagee under a second mortgage, is tenant in common with the assignees of the first, in the lands therein conveyed, which lands are charged with an incumbrance under a decree of partition, is primarily bound to extinguish such incumbrance, as well as all others existing or afterwards accruing.

(*Wynne* v. *Tunstall*, 1 Dev. Eq. 23; *Jones* v. *Sherrard*, 2 Dev. & Bat. Eq. 179; *Sutton* v. *Edwards*, 5 Ired. Eq. 125; *Coble* v. *Clapp*, 1 Jones Eq. 173; *Henderson* v. *Stewart*, 4 Hawks 256, cited and approved.)

This was a CIVIL ACTION, to foreclose a mortgage, tried before his Honor, *Judge Tourgee*, at the Special (January) Term, 1874, of WAKE Superior Court.

On the trial below, his Honor being of opinion that the title to the lands conveyed in the mortgage attempted in this proceeding to be foreclosed, being absolutely in one of the defendants, gave judgment against the plaintiffs for costs, &c., whereupon they appealed.

All the facts pertinent to the points raised and decided, are fully stated in the opinion of the Court.

*Moore & Gatling*, for appellants.
*Mason* and *Fowle*, contra.

RODMAN, J. This action is for the foreclosure of a mortgage on a moiety of certain lands executed on 8th September, 1859, by the Heron Mining Company to Winder, to secure certain debts, which with the mortgage were shortly afterwards assigned by him to Penelope Smith and Mary A. Smith, whom we will assume for the present, that the plaintiffs sufficiently represent.

The defendant Murray contends that he is the sole owner of the mortgaged lands by title paramount to the mortgage.

PULLEN, Ex'r. and Trustee *et al. v.* THE HERON MINING COMAANY *et al.*.

His claim is this:

·On 7th October, 1872, the sheriff of Wake county had three executions in his hands.

*The first* was tested of June Term, 1872, of the Supreme Court of this State, under a decree of that Court of June Term, 1869, in a suit for partition between the Company and Wiseman. This execution will be more particularly considered presently.

*The second* was tested of the same term of the Supreme Court, and was upon a decree for costs against the Company on a cross bill which Wiseman had filed against the Company in the suit for partition.

*The third* was upon a judgment in favor of Mason against the Company in Wake Superior Court given April, 1870. All the above judgments were duly docketed in Wake county.

It is not contended that the two last named judgments constituted any lien on the land in question, except in subordination to the mortgage to the plaintiffs. They may therefore be put out of view. Or if it is contended that the second named execution, viz: that on the cross bill, stands on a footing equal to that of the first named; then the same considerations which are applicable to the first are also applicable to that, and no distinct notice need be taken of it.

We will consider now the effect of the first named execution.

In 1857, the Heron Mining Company and Wiseman were tenants in common of a tract of land, parts of which were covered by the mortgages above referred to. In that year the Company commenced a suit against Wiseman for a partition of the common property, in the Superior Court of Wake. In the course of this suit, viz: on 24th September, 1857, Wiseman filed the cross bill above mentioned.

It will be observed that the original suit and cross bill were both begun before the date of the mortgage to plaintiffs, which was on 8th September, 1859. On 3d June, 1869, the parties agreed on terms of partition, to the effect that the Company should have certain described lands, and Wiseman certain

PULLEN, Ex'r. and Trustee *el al. v.* THE HERON MINING COMPANY *et al.*

other described lands, and that the Company should pay Wiseman $1,000, and the costs of the suit. In pursuance of this agreement the decree of the Supreme Court of June Term, 1869, was made which conformed to the agreement, and ordered that plaintiffs (the Company) pay the costs of the suit. The $1,000 was paid by the Company. The officers of the Court mainly interested in the judgment for costs assigned their rights to Parsons, who afterwards and before the sale in October, 1872, assigned to Murray. An execution issued on this decree from January Term, 1870, which in May, 1870, was levied on the share assigned to the Company by the decree.

It is contended on behalf of Murray: That as the decree of June Term, 1869, was made in pursuance of an agreement of the parties, it must be construed in reference to that agreement, and that the costs agreed to be paid by the Company being more than would in the absence of such agreement, have been imposed on it, must be regarded as so much paid for equality of partition; and consequently by the act, Rev. Code, ch. 82, sec. 3, was not merely a personal judgment against the Company, but a specific charge on the lands; and that consequently a sale of the share of the Company under that decree, passed to the purchaser a full title, paramount to any rights in the property created, as that of the plaintiffs in this action was, *pendente lite*, and extinquished the plaintiffs' title, both legal and equitable. *Wynne v. Tunstall*, 1 Dev. Eq., 23; *Jones v. Sherrard*, 2 D. & B. Eq., 179; *Sutton v. Edwards*, 5 Ire. Eq., 125; *Coble v. Clapp*, 1 Jones Eq., 173.

We are willing to receive this proposition as true, if applied to a purchase at execution sale by a stranger who was under no obligation to extinguish any incumbrances upon the estate of the Company.

But this was not the condition of Murray at the time of his purchase in October, 1872.

On 8th September, 1859, the Heron Mining Company executed a second mortgage to Winder to secure certain lands

PULLEN, Ex'r. and Trustee *et al. v.* THE HERON MINING COMPANY *et al.*

other than those secured by the first mortgage which was as-
signed to Penelope Smith and Mary Smith. This second
mortgage was upon the moiety theretofore mortgaged to the
Smiths, and also upon another one-fourth of the common lands.
It was expressly provided in it, that as to the moiety, it should
be secondary to the prior mortgage assigned to the Smiths. On
29th September, 1860, Winder assigned this second mortgage
to Parsons, who obtained a decree of foreclosure at June Term,
1870, of the Circuit Court of the United States, and on the
16th August, 1871, assigned all his estate under said second
mortgage to Murray, who on 12th December, 1871, purchased
at a sale under the decree of foreclosure, all the estate of the
Company, subject nevertheless to the first mortgage.

In October, 1872, therefore at the time of the purchase by
Murray under the execution issued upon the decree for parti-
tion, he was the owner of the equity of redemption in the
Company after payment of the first mortgage : he was also as
second mortgagee, a tenant in common with the Smiths of the
one fourth conveyed by the Company in the second mortgage.
For no partition had been made between him and the Smiths.
He had obtained these rights *pendente lite*, as the Smiths had
obtained theirs, and he had purchased with full knowledge of
the prior rights of the Smiths as to the moiety. From this it
follows, that his estate in that moiety, was primarily bound to
extinguish the incumbrances upon it, created by the decree or
decrees in the partition suit and cross bill. The estate of the
Company as it was in 1857, was bound to Wiseman to satisfy
the decree in his favor for costs. But as between the first and
second mortgages, the second took nothing in the mortgaged
property until the first mortgage was paid off, with all incum-
brances then existing, by relation (as in this case) or otherwise,
against the mortgagor. The purchase at the execution sale
was only the extinguishment of an incumbrance, which as be-
tween the two mortgages, was a prior one on the estate of the
second. The Company were unquestionably bound in favor of
the first mortgagee, to extinguish this incumbrance, as well as

all others then existing or afterwards accruing : as taxes, for example ; and Murray coming in as its assignee, with notice, took subject to its obligations. In extinguishing the incumbrance, he did only what the first mortgagee could have compelled the Company, and could have compelled him as the assignee of the Company's equity of redemption to do. *Henderson* v. *Stewart*, 4 Hawks, 256. That case, so far as it relates to the present point, was this : Casso agreed to purchase land from Alfred, and took a contract to that effect. Before paying the price he mortgaged to Moore, who paid off the debt to Alfred. The defendant Stewart was the assignee of Moore, and the plaintiff Henderson claimed under a purchase at execution sale of the equity of redemption of Casso. The Court held that the sum so paid by Moore was a charge against the owner of the equity of redemption.

We think the plaintiffs entitled to a decree of foreclosure on making Mary A. Smith a party. We take it to be clear that the mortgagees are necessary parties to a bill to foreclose, in order that the legal title may pass to the purchaser. If left outstanding, it might perhaps produce inconvenience hereafter.

PER CURIAM. Judgment below reversed, and upon the bill being amended in the way indicated, a decree may be drawn in conformity to this opinion.